NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

JAY W., )
) Supreme Court No. S-15764
Appellant, )
) Superior Court Nos. 4FA-12-00108/
v. ) 00109 CN
)
STATE OF ALASKA, ) MEMORANDUM OPINION
DEPARTMENT OF HEALTH & ) AND JUDGMENT*
SOCIAL SERVICES, OFFICE OF )
CHILDREN'S SERVICES, ) No. 1555 – September 28, 2015
)
Appellee. )
_____ )

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. David T. Jones, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

    *      Entered under Alaska Appellate Rule 214.

# I.  INTRODUCTION

Jay W.[1] appeals[2] the superior court's termination of his parental rights to his two Indian children.[3]  First, he argues that the superior court erred in finding that the children were in need of aid due to abandonment.  Second, he argues that the superior court erred in finding beyond a reasonable doubt that Jay's continued custody of the children was likely to result in serious emotional or physical damage to the children.  We conclude that Jay's arguments are without merit, and we therefore affirm the decision of the superior court.

# II.  STANDARD OF REVIEW

We review the superior court's findings of fact for clear error, and we review de novo as a question of law whether the superior court's findings satisfy the requirements of the child in need of aid statutes and rules.[4]

# III.  DISCUSSION

### A.  The Superior Court Did Not Clearly Err In Finding That The Children Were In Need Of Aid Due To Abandonment.

Before terminating parental rights the superior court must find by clear and convincing evidence that the child is in need of aid under AS 47.10.011.[5]  Under AS 47.10.011(1), the court may find a child to be in need of aid if "a parent or guardian

---

[1]  We use a pseudonym to protect Jay W.'s privacy.

[2]  The mother's rights were also terminated, but she did not appeal.

[3]  Both children are Indian children for purposes of the Indian Child Welfare Act.  *See* 25 U.S.C. § 1903(4) (2012).

[4]  *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 774 (Alaska 2012) (citing *S.H. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122-23 (Alaska 2002)).

[5]  AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A).

has abandoned the child as described in AS 47.10.013, and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter." In this case, the superior court found that the children were in need of aid under AS 47.10.011(10) (substance abuse) relating to the mother and under AS 47.10.011(1) (abandonment) relating to both parents. Because the mother did not appeal, we address only the findings of abandonment under AS 47.10.011(1).

The superior court determined (1) that "the parents abandoned the children by failing to maintain regular visitation with them and by destroying their attachment with them" and (2) that Jay had abandoned the children under AS 47.10.013(a)(4) by failing to participate in a suitable case plan designed to reunite him with the children.[6] To support his claim that the superior court erred in finding that the children were in need of aid due to abandonment, Jay emphasizes that during a five-month break in visitation, the parents made some efforts to see their children; the children were unavailable for part of that time; and the Office of Children's Services (OCS) failed to make any efforts to encourage visitation.

We use a two-part test to review cases of abandonment. For the court to find that a parent has abandoned his child, "(1) [t]here must be parental conduct evidencing a 'willful disregard' for parental obligations, leading to (2) the destruction of the parent-child relationship."[7] To overcome the first prong, the parent "must show 'continuing interest in the child and make a genuine effort to maintain communication

---

[6] AS 47.10.013(a)(4) provides: "Abandonment of a child also includes instances when the parent or guardian, without justifiable cause, . . . failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child[.]"

[7] *Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 335 (Alaska 2011) (alteration in original) (quoting *Rick P. v. State, Office of Children's Servs.*, 109 P.3d 950, 957 (Alaska 2005)) (internal quotation marks omitted).

and association.' "[8]  "The second prong is satisfied if there is a causal connection between the parent's conduct and the destruction of the relationship."[9]

### 1. Jay's failure to maintain regular visitation

The superior court first determined that "the parents abandoned the children by failing to maintain regular visitation with them and by destroying their attachment with them." The court also found OCS's requirement that the parents visit the children separately to be reasonable given the parents' "mutual emotional escalation." The court determined that the parents' refusal to visit the children independently or maintain contact "was a conscious choice on their part, a 'willful failure' to have contact with the children."

Jay argues that he was not at fault for his lack of visitation, but rather that his lack of visitation "was the product of poor communication and out-of-state travel." Jay's explanation, however, is incomplete, and the evidence shows that Jay failed to maintain regular visitation with his children. Jay and the mother were in Fairbanks for most of the time between December 11 and 26, 2013, during which time the parents received messages offering visits and Jay "declined a face-to-face offer . . . to visit the children upon [a] chance encounter [with an OCS worker] in Fairbanks." The parents requested a visit on Christmas Eve, but they arrived "15 to 30 minutes late for the visit . . . [and] OCS sent the children back to the foster home before [the parents] arrived." "The parents did not attend [a visit scheduled for January 28, 2014], even though OCS had paid for travel and provided a hotel." OCS thereafter stopped paying for air travel because the parents had failed to attend the January 28 visit, although the

---

[8]  *Id.* at 336 (alterations omitted) (quoting *Jeff A.C., Jr. v. State*, 117 P.3d 697, 704 (Alaska 2005)).

[9]  *Id.* (citing *In re. H.C.*, 956 P.2d 477, 483 (Alaska 1998)).

parents were not made aware of that descision. The parents then left Alaska from March 13 to April 15 without providing a contact number to OCS, and they did not request a visit until April 15. Although Jay argues that he had trouble reaching anyone at OCS while Bruce Downes, the parents' OCS worker, was on leave from March 13 to April 7, there were no messages on Downes's answering machine from Jay when Downes returned.

Jay also contends that, as a matter of law, a period of less than six months without visitation cannot serve as the basis for a finding of abandonment.[10] Jay misreads AS 47.10.013, which also allows a court to find abandonment where "a parent or guardian has shown a conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult."[11] Although abandonment may be found where the parent "failed for a period of at least six months to maintain regular visitation with the child,"[12] a period of less than six months may support a finding of abandonment where the court finds a conscious disregard of parental responsibilities that destroys the relationship between parent and child. Here the court found that Jay willfully disregarded his parental obligations and destroyed his relationship with his children, and we discern no error in these findings.

Finally, the superior court found that the parents' failure to maintain visitation with their children caused the destruction of the parent-child relationship and

---

[10]    "Abandonment of a child also includes instances when the parent or guardian, without justifiable cause, . . . (3) failed for a period of at least six months to maintain regular visitation with the child[.]" AS 47.10.013(a)(3).

[11]    AS 47.10.013(a).

[12]    AS 47.10.013(a)(3).

that Jay therefore abandoned his children under AS 47.10.013(a). The superior court's holding was based on expert testimony regarding the importance of attachment between children and their primary caregivers and expert testimony describing how visitations may help maintain that attachment between children in State custody and their parents. The expert explained that, in this case, "the children have not had consistent healthy bonding with the parents because of the parents' failure to visit" and "the children do not present as having a healthy attachment to the parents." From the evidence presented, the superior court determined that the parent-child relationship was destroyed due to the parents' failure to visit their children, and we find no clear error in this conclusion.

We have carefully examined the record and conclude that the superior court did not err in finding that Jay abandoned his children by failing to participate in visitation. Although there does appear to be a failure to communicate to some degree, the parents failed to visit their children even when they were in Fairbanks for most of the time between December 11 and 26, 2013, and they skipped visits on other occasions. We see no clear error in either the court's finding that OCS's requirement that the parents visit with the children individually was reasonable or in the court's finding that the parents' failure to request individual visitation evidenced a willful disregard for parental obligations. Further, we agree with the court that the parents' failure to maintain visitation with their children caused the destruction of the parent-child relationship and that Jay therefore abandoned his children under AS 47.10.013(a).

### 2. Jay's failure to participate in a case plan

The superior court found that Jay abandoned the children under AS 47.10.013(a)(4) by failing to participate in a suitable case plan designed to reunite

him with the children.[13] The court determined that, although he "participat[ed] in his case plan by obtaining psychological evaluations and apparently a substance abuse assessment[,] . . . [his] participation in his case plan was only minimal"[14] and he "thus abandon[ed] his children under AS 47.10.013(a)(4)."

Jay argues that his actions did not demonstrate a willful disregard for his parental obligations and that he more than minimally participated in his case plan. While Jay did not attend his first three case-planning meetings, he did eventually meet with his case manager, Rosalie Rein, in February 2013. His initial goals included acquiring his driver's license and finding employment, but he was not "completely successful" in achieving those goals.

His case plan was modified in August 2013. The revised case plan listed Jay's goals as "[f]amily contact with [the children]"; "speak[ing] to [his case manager] at least monthly to discuss case planning"; "mak[ing] sure that his children ha[d] access to food and shelter that's safe and stable, and clothing"; and "know[ing] what it looks like when children are unsafe, and prevent[ing] the children he is around from being in unsafe situations." Although Jay did make some preliminary progress in obtaining shelter and food for his children, he failed to regularly visit his children after November 2013. The superior court found that "[i]nstead of exercising separate visits, [the parents] placed their selfish desire for joint visitation above their children's need to maintain a bond with them." This finding is supported by the record.

---

[13]     "Abandonment of a child also includes instances when the parent, . . . without justifiable cause, . . . (4) failed to participate in a suitable plan or program designed to reunite the parent . . . with the child." AS 47.10.013(a)(4).

[14]     *See A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 951 (Alaska 2000) (holding that participation in a case plan does not require a parent to follow the plan exactly, but "it does require more than minimal participation").

Jay was additionally required to "be in control of his emotions and avoid yelling and violence when he's frustrated." In order to meet those goals, Jay was directed to "attend counseling . . . for psychiatric care when he is in Fairbanks" and to "follow [the doctor's] recommendations." He was also directed to "attend counseling . . . when he is in town and . . . have someone . . . visit [Jay] . . . when they have a mental health provider in the area. [Jay was] to address stress management and communication as well as treatment goals set by [his] provider." The court found, however, that Jay never attended a parenting education class, and "he disagree[d] with all recommendations for counseling or education and has done nothing to go to counseling." The court also found that Jay failed to follow through on the recommendations from his psychological evaluations, as required by his case plan. Further, he failed to deal with his uncontrolled angry outbursts and failed to acknowledge the impact that his outbursts have on his parenting.

Finally, Jay's case plan required that he be "sober from marijuana and alcohol" and required that he undergo urinalysis testing when he was in Fairbanks. Jay did not fully comply with this requirement; he only rarely underwent urinalysis testing, and at least three of those tests came back positive for marijuana.

We have carefully examined the record and conclude that the superior court did not err in finding that Jay abandoned his children by failing to participate in his case plan. Although Jay appears to have taken some preliminary steps toward completing his case plan, he failed to adequately address his ongoing mental health issues or to undertake any parenting counseling or education. He took a few urinalysis tests, but in those tests he tested positive for marijuana. Therefore, his participation in the case plan was no more than minimal, and the court did not err in concluding that he abandoned his children under AS 47.10.011(a)(4).

**B.    The Superior Court Did Not Clearly Err In Finding That Continued Custody Of The Children By The Parent Is Likely To Result In Serious Emotional Or Physical Damage To The Children.**

Before terminating parental rights, the Indian Child Welfare Act (ICWA) requires that the court find "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[15]  Meeting the standard requires proof that the parent's conduct is likely to harm the children and proof that it is unlikely the parent's conduct will change.[16]

The superior court found proof beyond a reasonable doubt, including expert testimony, that the parents' continued custody was likely to result in serious emotional or physical damage to the children.  The court's conclusion was based on (1) the mother's failure to treat her alcohol dependence and Jay's enabling of that behavior; (2) the parents' failure to visit their children for the five months before trial and the resulting broken bonds between the parents and the children; (3) Jay's failure to address his emotional outbursts; and (4) the parents' unwillingness to admit that their children need special assistance.

Jay argues that he encouraged the mother to go to treatment and that he had only once been seen drinking alcohol with her.  The court found, however, that Jay and the children's mother are "inseparable and co-enabling" and that, "as a [parenting] team, they are dysfunctional parents."  "[The mother] has endangered her children's welfare through her intoxication" and Jay's "untreated alcohol and marijuana dependence is [not] irrelevant to the issue of whether continued custody of the children is likely to result in

---

[15]    25 U.S.C. § 1912(f) (2012).

[16]    *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000).

serious emotional or physical damage to the children."  An expert testified that "parents who abuse substances . . . react unpredictably to their children's needs and, over the longer term, the children fail to develop a sense of control and develop behavior problems."

The court also identified the parents' failure to visit their children for the five months before trial as an issue likely to cause severe damage to the children.  The court agreed with the expert that "there would be concern for the children's emotional health if they were returned to their parents given the parents' decision to stop seeing the children on a consistent basis over many months before trial."

Regarding his emotional outbursts, Jay argues that they were never directed at anyone other than OCS staff and that there is no evidence that his outbursts affected his children.  He argues that "[t]here were only two occasions OCS could identify where Jay had an emotional outburst in front of the children, and this is hardly sufficient under federal law to terminate parental rights to an Indian child."  But the superior court found that Jay "remains untreated for his emotional outbursts . . . .  There were outbursts . . . in front of the children in OCS's offices and in the . . . home."  At trial, Jay defended his outbursts as justified, indicating that he does not view his emotional issues as problematic.  The superior court's finding is not clearly erroneous.

Finally, the superior court noted that the parents were unwilling to admit that their children need special assistance.  The court found that this means that the parents will not seek assistance for the children, to the children's detriment, citing the fact that the parents became upset when the children's school suggested there might be some issues involving their children.

We conclude that the superior court's findings satisfy the requirements of the child in need of aid statutes and rules, and we hold that the court's findings of fact were not in clear error.  We have carefully examined the record and conclude that the

superior court did not err in finding beyond a reasonable doubt that continued custody of the children by Jay is likely to result in serious emotional or physical damage to the children. This conclusion is supported by the following findings: (1) the mother's substance use continues to be a concern for the children's physical and emotional health; (2) as long as Jay and the mother remain together — as they indicated they would — and Jay continues to enable her behavior, the children will be at risk of emotional and physical harm; (3) the parents' failure to see their children over the course of the five months before trial negatively impacted the children's emotional health; (4) Jay's mental health problems remain untreated; and (5) the parents' refusal to acknowledge that the children need special assistance will harm the children.

## IV. CONCLUSION

We AFFIRM the superior court's termination of Jay's parental rights.